FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 30, 2024

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DESSIRAE R.,[1]

                    Plaintiff,

        v.

MARTIN O'MALLEY, Commissioner of
Social Security,

                    Defendant.

No.    2:24-cv-172-EFS

**ORDER AFFIRMING THE ALJ'S DENIAL OF BENEFITS**

Plaintiff Dessirae R. asks the Court to reverse the Administrative Law Judge's (ALJ) denial of Title 16 benefits. Plaintiff claims she is unable to work due to physical and mental impairments. Although Plaintiff's impairments limit her physically and mentally, the ALJ's nondisability finding is explained and supported by substantial evidence. For the reasons that follow, the ALJ's decision is affirmed.

## I.    Background

On April 23, 2018, at the age of 38, Plaintiff applied for benefits under Title

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

16.[2] Plaintiff previously worked, including as a hairstylist, administrative clerk, cashier, fountain server, and barista/coffee maker.[3] She claims that her anxiety and other mental impairments, along with her physical pain and limitations related to her fibromyalgia, low back, and lower extremities, combined with her obesity and hypertension, prevent her from being able to work fulltime.

The agency disagreed that she was disabled and denied benefits.[4] Upon Plaintiff's request, a hearing was held in February 2020 before ALJ Laura Valente, who took testimony from Plaintiff and a vocational expert.[5] Plaintiff testified that she lost her most recent job as a hair stylist because of a verbal altercation with a co-worker due to Plaintiff's anxiety.[6] She believed that since she stopped working her mental-health symptoms, namely her racing thoughts, panic attacks, and anxiety, had worsened. She testified that her medications helped lessen her mental-health symptoms and pain but not to an extent that allowed her to work full-time.[7] She stated that her pain caused nausea and vomiting, which limited her

---

[2] AR 239–47.

[3] AR 1354.

[4] AR 172–75, 179–85.

[5] AR 77–115.

[6] AR 82, 105–06.

[7] AR 87–88, 93–94.

1    ability to play with her granddaughter and impacted her sleep.[8] She received

2    benefits through the State, which allowed about 69 hours a month of in-home care

3    to help her with getting in and out of the shower and with household tasks.[9] She

4    shared that she cannot stay in any position too long due to her pain and that her

5    pain causes her to become distracted and lose focus.[10]

6         A month later, ALJ Valente issued a decision denying benefits.[11] The

7    Appeals Council denied review; and Plaintiff filed an appeal in district court.[12] On

8    review, the district judge remanded the matter for additional proceedings.[13]

9         A second hearing was held before ALJ Valente in January 2024, during

10   which Plaintiff and a vocational expert testified.[14] Plaintiff testified that her low-

11   back pain had increased since the last hearing and that a new MRI of her lumbar

12   would be scheduled after she participated in the insurance-required physical

---

[8] AR 89–90, 99–100.

[9] AR 91–92.

[10] AR 100–03.

[11] AR 12–29.

[12] AR 1–8.

[13] AR 1364–80 (E.D. Wash. No. 2:20-cv-386-SMJ). The district judge required the Commissioner to reevaluate Plaintiff's symptom reports, Dr. Metoyer's opinion, and step five.

[14] AR 1382–1414.

therapy.[15] She stated that her back pain lessened sometimes for a month or two but then it returned for several months.[16] She shared that low-back injections did not offer relief to an extent that she could engage in more activities of daily living.[17] Plaintiff testified that she lived with her partner, her adult daughter, and her 11-year-old granddaughter.[18] She testified that she tried not to be home alone because she was a fall risk, caused in part by the stabbing-type pain in her left leg.[19] She stated that she typically had a cane available, which she used a few times a week since her knee surgery in June 2021.[20] Although her left-knee surgery initially lessened her pain, she stated that her left knee started bothering her again about 3–6 months prior to the hearing with pain, soreness, and swelling.[21] She did not usually drive because her pain caused her legs to jerk.[22] She testified that she rotated between sitting and standing because, if she sits down too long, she experiences low-back pain and, if she stands too long, she gets low-back

---

[15] AR 1388.

[16] AR 1388–89.

[17] AR 1391.

[18] AR 1393.

[19] AR 1394.

[20] AR 1394-95, 2604.

[21] AR 1401-02.

[22] AR 1395–96.

pain and/or jerking sensations and pain in her legs.[23] She had a care provider, who is her partner, who does the grocery shopping.[24] She indicated that she had a hard time focusing.[25] She shared that, although she had been in mental-health counseling for years, she was not currently in counseling because her counselor had left the clinic and she was "trying to work myself up to going back."[26] She testified that she took medication for her anxiety and depression, along with Suboxone.[27] She shared that she could say inappropriate, offensive things when she feels like she is being emotionally attacked.[28] She stated that she had trouble sleeping for longer than five hours due to pain, and so she was tired during the day.[29]

The ALJ again denied benefits, finding:

- Step one: Plaintiff had not engaged in substantial gainful activity since April 23, 2018, the application date.

- Step two: Plaintiff had the following medically determinable severe impairments: degenerative disc disease of the lumbar spine with

---

[23] AR 1402.

[24] AR 1397.

[25] AR 1400.

[26] AR 1404.

[27] AR 1404.

[28] AR 1405.

[29] AR 1406.

peripheral neuropathy, degenerative joint disease of the hips,

degenerative joint disease of the knees status post left knee

replacement, obesity, fibromyalgia, hypertension, substance use

disorder, anxiety disorder, and post-traumatic stress disorder (PTSD).

- Step three: Plaintiff did not have an impairment or combination of

  impairments that met or medically equaled the severity of one of the

  listed impairments.

- RFC: Plaintiff had the RFC to perform modified light work:

  > the claimant can stand and walk for a total of two hours in
  > an eight-hour workday; can sit for one hour at a time after
  > which she needs to change position for a few minutes but
  > can continue working while in the changed position and
  > then sit for another hour, and can sit in this manner for six
  > hours total in an eight-hour workday; occasionally climb
  > ramps, stairs, ladders, ropes, and scaffolds; occasionally
  > stoop, kneel, crouch, and crawl; frequently balance;
  > frequently push and pull with the bilateral lower
  > extremities; and must avoid concentrated exposure to
  > wetness, vibrations, and hazards. The claimant is limited to
  > simple routine tasks in two-hour increments; can work in
  > the same room with coworkers but with no coordination of
  > work activity; can work superficially and occasionally with
  > the general public; and can adapt to simple workplace
  > changes.

- Step four: Plaintiff was unable to perform past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work

  history, Plaintiff could perform work that existed in significant

numbers in the national economy, such as router, marker, and marker II.[30]

The ALJ found Plaintiff's alleged symptoms were "not entirely consistent" with the medical evidence and other evidence.[31] The ALJ considered the lay statements from Plaintiff's daughter, sister, and friend.[32] As to the medical opinions, the ALJ found:

- The reviewing opinions of Carol Moore, PhD, and Matthew Comrie, PsyD, persuasive, except for the limitation that Plaintiff was limited to one-to-three step tasks, which the ALJ found not persuasive.

- The consultative opinion of Patrick Metoyer, PhD, not entirely persuasive.

- The reviewing opinions of Dennis Koukol, MD, and Merry Alto, MD, persuasive.

---

[30] AR 1331–62. Per 20 C.F.R. § 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[31] AR 1342. As recommended by the Ninth Circuit in *Smartt v. Kijakazi*, the ALJ should consider replacing the phrase "not entirely consistent" with "inconsistent." 53 F.4th 489, 499, n.2 (9th Cir. 2022).

[32] AR 1354.

1
2
3
4

- The examining opinion of Dr. Massoud persuasive, except for his opinion that Plaintiff would do best at a desk job, which the ALJ found not entirely supported or consistent with the record.[33]

Plaintiff timely requested review of the ALJ's decision by the Court.

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error" and such error impacted the nondisability determination.[34] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[35]

---

[33] AR 1352–54.

[34] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[35] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*,

1

### III.    Analysis

2

Plaintiff argues the ALJ erred by improperly rejecting Plaintiff's symptom

3

testimony and by not adopting Dr. Metoyer's opined non-exertional limitations. In

4

response, the Commissioner contends there was no error—the ALJ's findings were

5

reasonable and supported by substantial evidence. As is explained below, Plaintiff

6

fails to establish consequential error.

7

**A.    Symptom Reports: Plaintiff fails to establish consequential error.**

8

Plaintiff argues the ALJ failed to provide valid reasons for discounting her

9

physical and mental symptom reports. As is discussed below, the ALJ's reasons for

10

discounting Plaintiff's symptom reports are clear and convincing reasons supported

11

by substantial evidence.

12

1.    <u>Standard</u>

13

The ALJ must identify what symptom complaints are being discounted and

14

clearly and convincingly explain the rationale for discounting the symptom

15

complaints with supporting citation to evidence.[36] This requires the ALJ to "show

16

his [or her] work" and provide a "rationale . . . clear enough that it has the power to

17

convince" the reviewing court.[37] Factors the ALJ may consider when evaluating the

18

19

143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does

20

not indicate that such evidence was not considered[.]").

21

[36] *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

22

[37] *Id.*

23

intensity, persistence, and limiting effects of a claimant's symptoms include: 1) objective medical evidence, 2) daily activities; 3) the location, duration, frequency, and intensity of pain or other symptoms; 4) factors that precipitate and aggravate the symptoms; 5) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; 6) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; and 7) any non-treatment measures the claimant uses or has used to relieve pain or other symptoms.[38]

2.    Plaintiff's Symptom Testimony

As mentioned above, Plaintiff testified at both of the administrative hearings about her physical and mental symptoms. She discussed that physically she is tired; has pain in her legs and low back and thus has difficulty sitting and standing for periods of time and so she must rotate between sitting and standing; has fallen due to her leg pain; experiences diffuse pain, nausea, and bruising due to fibromyalgia; and has difficulty getting in and out of the shower. As to her mental symptoms, she alleges difficulties concentrating and staying focused, as well as difficulties being around non-family members due to anxiety, irritability, racing thoughts, and panic attacks. She stated that she does not drive herself unless

---

[38] 20 C.F.R. § 416.929(c)(2), (3). *See also* 3 Soc. Sec. Law & Prac. § 36:26, Consideration of objective medical evidence (2019).

necessary due to jerking sensations in her legs and fatigue. She stated that she uses a cane a few times a week, as necessary.

### 3.    ALJ's Reasons and Analysis

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her impairments were "not entirely consistent with the medical evidence and other evidence in the record," specifically "relatively modest objective findings that do not support greater limitations and are not entirely consistent with the extent of symptoms and limitations alleged," that the record was inconsistent with Plaintiff's allegation that she uses a cane frequently, that Plaintiff's mental-health impairments improved with treatment and the overall modest mental status examination findings were not entirely consistent with, nor supported, the extent of alleged symptoms and limitations alleged; and that Plaintiff's reported activities to care providers suggested greater functioning than as testified to by Plaintiff.[39] The Court addresses each reason in turn.

#### a.    *Objective Physical Findings*

Objective medical evidence—signs, laboratory findings, or both—is a relevant factor for the ALJ to consider when assessing a claimant's symptoms.[40] An ALJ may consider discrepancies between a claimant's reported symptoms and the

---

[39] AR 1342–51.

[40] 20 C.F.R. § 416.902(k, (l); 3 Soc. Sec. Law & Prac. § 36:26, Consideration of objective medical evidence (2019).

observations of treatment providers.[41] While an ALJ may not "reject a claimant's subjective complaints based *solely* on lack of medical evidence to *fully corroborate* the alleged severity of pain,*"* the ALJ may discount subjective complaints that are *inconsistent* with the objective medical evidence, so long as the ALJ explains why the objective medical findings are inconsistent with the claimant's complaints.[42]

Plaintiff argues the ALJ, after identifying several physical conditions, failed to discount any specific symptom testimony, including that she is a "fall risk," that she must change positions due to her pain, and that she must stop and rest during activities. The Court disagrees. The ALJ meaningfully summarized and discussed significant portions of the treatment record over the longitudinal period. When doing so, the ALJ highlighted that, notwithstanding the imaging revealing lumbar, hip, and knee impairments, Plaintiff generally presented with normal gait, strength, and sensation in her lower extremities, particularly after her knee surgery in March 2021. Although her gait was sometimes impacted both before and immediately after her knee surgery, Plaintiff was observed with a normal gait four months after surgery with excellent range of motion.[43] This is consistent with the comprehensive physical examinations of record showing that Plaintiff presented

---

[41] *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

[42] *Smartt*, 53 F.4th at 498 (quoting *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (emphasis added in *Smartt*)).

[43] AR 2589, 3798–800.

with full lower extremity strength, negative straight leg raising, normal gait, and ability to change position without assistance.[44]

In her Reply, Plaintiff acknowledges that surgery improved her knee symptoms for a period of time, but she argues that the ALJ failed to explain how the improved knee symptoms reduced her lumbar, hip, and fibromyalgia symptoms. The Court disagrees; the ALJ adequately discussed why the objective medical findings and Plaintiff's reports of improvement with medication were inconsistent with and did not support Plaintiff's more disabling complaints. For instance, the ALJ discussed that, notwithstanding the imaging showing significant degenerative disc height loss and right lateral spondylolistheses and tenderness to palpation in the left paraspinal and some tingling down her leg and in her foot, the physical exam findings were largely normal. Plaintiff had a negative straight leg raise and was able to change positions, rise onto the balls of her feet and rock back on her heels, complete a squat and return to standing, and walk with a steady and

---

[44] *See also* AR 519–21 (Aug. 2018: normal, steady gait with ability to sit and rise to standing position without assistance, and intact lower extremity muscle strength with negative bilateral straight leg raising tests); AR 3665 (Dec. 2021: steady non-antalgic gait, along with ability to squat and return to standing without difficulty); AR 4125–26 (Dec. 2023: "can stand and walk and move about the room without loss of balance or abnormal gait. She has no obvious antalgia.").

non-antalgic gait.[45] In addition, the ALJ discussed that, even though the MRI of the lumbar spine showed multilevel degenerative disc disease with associated posterior disc bulges/osteophytes resulting in mild to moderate spinal stenosis at multiple levels with associated encroachment on many lateral recesses and probable impingement at lumbar nerve roots, an August 2022 physical examination again showed full motor strength throughout the bilateral lower extremities, full range of motion of the lumbar spine, and normal muscle build and tone in the bilateral upper and lower extremities.[46] The ALJ also highlighted that, during Plaintiff's routine chronic-pain and opiate-dependence appointments, Plaintiff generally presented with normal gait and no gross motor, cognitive, or sensory defects.[47] The ALJ discussed that during an orthopedic assessment in December 2023, Plaintiff could stand, walk, and move about the room without loss of balance or abnormal gait, rose on her toes and stood on her heels, performed a partial squat and recovered with equal leg strength, had 5/5 strength against resistance in both lower extremities, and had free, unrestricted range of hips and lower extremities in a seated position, notwithstanding some mild lumbar

---

[45] AR 1345–46 (citing AR 3660–66).

[46] AR 1356, 2579, 3595–99. The ALJ mistakenly cited to Dr. Demirjian's evaluation as being in August 2023; the evaluation occurred in August 2022. This error is not consequential.

[47] AR 1347.

tenderness.[48] On this record, the ALJ reasonably found that the longitudinal medical record was inconsistent with Plaintiff's reported extreme limitations when standing, walking, and sitting, and also that the medical records did not support greater limitations than those assessed for light work with reduced standing and walking, positional changes, and limited postural activities.

### b. _Inconsistencies about reported use of a cane_

The ALJ found the inconsistencies in the record as to whether Plaintiff did or did not frequently use a cane or other assistive device detracted from the reliability of Plaintiff's allegations about her difficulties walking.[49] An ALJ may consider whether a claimant offers conflicting symptom reports or statements that indicate a lack of candor.[50] Here, the ALJ highlighted that, in contrast to Plaintiff's testimony that she uses a cane frequently, there were few medical records that indicated she was observed using a cane or with an abnormal gait, and there was no evidence that a provider determined that an assistive device was medically necessary, other than when recovering from knee surgery. It was reasonable for the

---

[48] AR 1347 (citing AR 4125–26).

[49] AR 1348.

[50] 20 C.F.R. § 416.929(c)(4). _See Smolen_, 80 F.3d at 1284 (The ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid.").

ALJ to review the medical records for notations as to whether Plaintiff presented to appointments with a cane or was observed with an impaired gait. Because medical providers did not report observing Plaintiff's use of a cane or other assistive device (other than immediately after her knee surgery), but instead typically noted a normal gait and full leg strength (other than leading up to and immediately after the knee surgery), substantial evidence supports the ALJ's finding.[51]

In her Reply, Plaintiff says the lack of observation/notation by treating providers about the use of a cane is consistent, rather than inconsistent, with her statement that she uses a cane a few days a week. However, given the significant number of medical records over the relevant longitudinal period and the dearth of observed use of a cane (or other assistance device), other than immediately after her knee surgery, along with the typically noted normal gait and full leg strength, the ALJ's finding that "[t]his inconsistency tends to detract from the reliability of the claimant's allegations" is supported by substantial evidence.[52]

### c.    *Mental-Health Symptoms*

As mentioned above, the ALJ is to consider whether reported symptoms are consistent with and supported by the medical evidence.[53] Likewise, a claimant's improvement with treatment is "an important indicator of the intensity and

---

[51] *See, e.g.*, AR 1303,1906, 2429, 2444, 2490, 2499, 2507.

[52] *See Smart*, 53 F.4th at 498–99.

[53] 20 C.F.R. § 416.902(k), (l).

persistence of . . . symptoms."[54] However, reports of improvement "must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms," as well as with an awareness that "improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace."[55]

Plaintiff argues the ALJ failed to give reasons for rejecting Plaintiff's testimony that she has difficulty focusing due to her racing thoughts, anxiety, and pain and that she must take frequent naps throughout the day due to problems sleeping. But the ALJ did not fully discount Plaintiff's reported non-exertional difficulties. Instead, the ALJ agreed that these mental impairments and her pain limited Plaintiff and so the ALJ restricted her to modified light work, simple routine tasks with no coordination of work activities with coworkers and only superficial and occasional contact with the general public and simple workplace changes. In reaching this finding, the ALJ fairly considered the longitudinal medical record, highlighting both medical records indicating normal mental-health observations and findings, those records indicating reported improvement, and those records indicating that Plaintiff was observed to be depressed, anxious,

---

[54] *Id.* § 416.929(c)(3). *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").

[55] *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (cleaned up).

tearful, and/or irritable.[56] The ALJ reasonably interpreted the longitudinal record as showing that Plaintiff's mental-health symptoms were modest overall and that Plaintiff reported improvement. For instance, although Plaintiff was noted as being depressed or anxious, particularly during the initial months of the global pandemic in 2020, providers only rarely noted difficulty concentrating.[57] Moreover, Plaintiff did not show any deficiencies in focus, conversing, speaking, or memory during her consultative evaluation with Dr. Metoyer.[58] In addition, although some treatment providers noted that Plaintiff reported difficulties with sleeping or tiredness, no provider noted that she appeared tired, although she did appear disheveled on two occasions.[59] On this record, the ALJ reasonably considered the discrepancies between Plaintiff's reported symptoms and the observations of the treatment providers, and then reasonably found that Plaintiff's reported disabling mental-health symptoms were inconsistent with the modest observations of her treatment providers and were not supported by the mental-health findings of record.[60] Substantial evidence supports the ALJ's finding.

---

[56] AR 1339–40, 1349–51.

[57] *Compare* AR 1922, 1938 *with* AR 1928, 1946, 1950, 1954, 1958, 1979.

[58] AR 527–28.

[59] AR 623, 1129.

[60] *See Smolen*, 80 F.3d at 1284.

1

d.    _Reported activities_

2    Lastly, the ALJ found that activities referenced in the medical records were

3    not consistent with Plaintiff's reported difficulties with transportation, physical

4    mobility, going out alone, being in public spaces, or sleep. An ALJ may discount a

5    claimant's testimony about her symptoms if she engaged in activities inconsistent

6    with the reported disabling symptoms or if the claimant's testimony is inconsistent

7    with her prior statements.[61] However, the ALJ should not penalize the claimant for

8    attempting to engage in normal life activities.[62] "The Social Security Act does not

9    require that claimants be utterly incapacitated to be eligible for benefits, and many

10   home activities may not be easily transferable to a work environment where it

11   might be impossible to rest periodically or take medication."[63]

12   Plaintiff argues the ALJ failed to identify activities that were inconsistent

13   with her reports of heightened anxiety when going out in public, as the ALJ's

14   reliance on Plaintiff accompanying her mother to doctor's appointments and going

15

16   [61] 20 C.F.R. § 416.929(c)(4); _Molina_, 674 F.3d at 1113; _Smolen_, 80 F.3d at 1284.

17   [62] _Garrison_, 759 F.3d at 1016; _Vertigan v. Halter_, 260 F.3d 1044, 1050 (9th Cir.

18   2001) (The Ninth Circuit has "repeatedly asserted that the mere fact that a

19   plaintiff has carried on certain daily activities, such as grocery shopping, driving a

20   car, or limited walking for exercise, does not in any way detract from her credibility

21   as to her overall disability.").

22   [63] _Smolen_, 80 F.3d at 1287 n.7.

23

DISPOSITIVE ORDER - 19

to casinos in the early morning hours are not activities that conflict with her reported anxiety symptoms. Plaintiff highlights that she receives caregiver-service benefits from the State for help "dispersing [her] medication, bills, organization in the home, cleaning, [and] a lot of help in the restroom."[64] Plaintiff also points out that she did not testify that she never drove but instead that she avoids solo car trips due to pain in her legs and because she has fallen asleep in the car before.[65] Finally, Plaintiff highlights that the prior district court order found that the ALJ's reliance on Plaintiff's ability to attend church and Bible study did not demonstrate any inconsistency with Plaintiff's symptom reports, particularly as Plaintiff reported having a mental episode after taking a trip to California to visit her brother and when traveling to Mexico to have a surgery.

On reevaluation, the ALJ fairly considered Plaintiff's reported activities to treating providers and compared those to her reported symptoms, and then provided a rationale clear enough to convince the Court that Plaintiff's symptom testimony about her physical and mental limitations is not consistent with her activities reported to treating providers, particularly when the reported activities are considered along with the objective medical findings. The ALJ considered that Plaintiff took her mother to her appointments, raised her grandchild, took trips to visit family, attended a concert, and visited casinos, and she did these things

---

[64] AR 92.

[65] AR 1395–96, 1406.

without reporting to treating providers that such activities caused significant non-exertional difficulties. While Plaintiff's activities in isolation may not serve as substantial evidence to support the ALJ's conclusion, when viewed cumulatively, the ALJ reasonably found that Plaintiff's activities revealed greater functioning than she alleged as to travel, going out to public places, physical activity, and the need to nap.[66] For instance, although Plaintiff visited the casino in the early morning hours—hours during which Plaintiff submits there are less people at the casino, Plaintiff drove by herself to the casino.[67] Moreover, she attended a concert in a large city more than four hours away from her hometown without reporting any difficulties with either the travel or being in close proximity to strangers at the concert; instead following up the Portland concert six weeks later with a trip to Seattle, which is about three hours away from her hometown.[68] Thus, substantial evidence supports the ALJ's conclusion that Plaintiff reported activities to her providers that "suggest greater functioning than alleged."[69]

---

[66] *See* AR 1548, 1558, 1567, 1911, 1108. *See also* AR 1639 (visiting Los Angeles to experience Super Bowl hype).

[67] AR 2042–43, 2048.

[68] AR 1548–58. *Compare* AR 1263, 1267, 1108 (discussing that she will be on vacation in California for 10 days and then mentioning that she had an episode while in California because she felt both happy and mad for going to a fair).

[69] AR 1351.

1    4.    No Error

2    In summary, Plaintiff fails to establish the ALJ erred by discounting her

3    symptom reports.

4    **B.    Medical Opinions: Plaintiff fails to establish consequential error.**

5    Plaintiff argues the ALJ failed to fully incorporate Dr. Metoyer's opined

6    limitations into the RFC. In response, the Commissioner highlights that the ALJ

7    did adopt Dr. Metoyer's social-interaction and simple work limitations and argues

8    that the ALJ otherwise reasonably found that Dr. Metoyer's attendance and work-

9    completion limitations were either vague or not supported by or inconsistent with

10   the medical record.

11   1.    Standard[70]

12   The ALJ must consider and articulate how persuasive she found each

13   medical opinion and prior administrative medical finding, including whether the

14   _____

15   [70] In Plaintiff's opening brief, she argues that the ALJ "did not provide specific and

16   legitimate reasons" for not fully crediting Dr. Metoyer's opined limitations. As the

17   Commissioner points out in his brief, "specific and legitimate" is no longer the

18   standard. Instead, the ALJ must consider and articulate why she did or did not

19   find the medical opinion consistent with and/or supported by the record and her

20   findings must be supported by substantial evidence. In her Reply, Plaintiff agrees

21   that substantial evidence is the applicable standard, considering the factors set

22   forth 20 C.F.R. § 416.920c(c)(1)–(5).

23

medical opinion or finding was consistent with and supported by the record.[71] The

factors for evaluating the persuasiveness of a medical opinion include, but are not

limited to, supportability, consistency, relationship with the claimant, and

specialization.[72] Supportability and consistency are the most important factors.[73]

The ALJ may, but is not required to, explain how the other listed factors were

considered.[74] When considering the ALJ's findings, the Court is constrained to the

reasons and supporting explanation offered by the ALJ.[75]

2.   Dr. Metoyer

Dr. Metoyer conducted a mental examination of Plaintiff in August 2018.[76]

He collected historical information during his interview of Plaintiff and reviewed

an April 24, 2018 medical record. This reviewed medical record states:

> Dessirae was dressed appropriately for weather, she has many tattoos
> and some piercings. She appeared clean and groomed. Eye contact
> was good and she spoke in an even voice. She was engaged in the
> intake process. Thought process, memory and cognitive function
> appeared intact. There was no report of hallucinations, delusions or
> paranoid thinking. Self esteem issues were present. Mood was
> depressed, worried and frustrated over the relationship and choices

---

[71] 20 C.F.R. § 416.920c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

[72] 20 C.F.R. § 416.920c(c)(1)–(5).

[73] *Id.* § 416.920c(b)(2).

[74] *Id.*

[75] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

[76] AR 525–29.

1
2

her daughter is making. Concentration and focus were seen as fair. She reports no cognitive delays or head trauma.[77]

Plaintiff told Dr. Metoyer that she has some difficulty with personal care and

3
4

hygiene, she self isolates, she does not attend social events, she has some difficulty

5
6

concentrating, and her mood was "irritable, moody, down, depressed."[78]

Dr. Metoyer noted that Plaintiff's affect was congruent with her stated mood and

7
8

that she was appropriately dressed, cooperative, and engaged with non-pressured

speech, goal-directed thought process, full orientation, normal recent and remote

9
10

memory, and adequate fund of knowledge and abstract thinking, and had no

difficulty following the conversation or following a three-step command and

11

performing serial sevens. Dr. Metoyer opined:

12
13
14
15

> Her ability to interact with co-workers and the public is likely moderately impaired. Due to anxiety, PTSD, OCD, mood symptoms, tendency to isolate herself from others, her ability to maintain regular attendance in the workplace is moderately impaired. Her ability to complete a normal work day or work week without interruption from anxiety, PTSD, OCD, mood symptoms is likely moderately impaired. Her ability to deal with the usual stress encountered in the workplace is markedly impaired if it involves persistent activity, complex task, task pressure, interacting with other individuals.[79]

16
17
18
19
20

[77] AR 442 (April 24, 2018 Grant Integrated Services mental-health intake).

21
22

[78] AR 527.

[79] AR 529.

23

The ALJ found that Dr. Metoyer's opinion was "not entirely persuasive for several reasons."[80] First, the ALJ found that Dr. Metoyer's "largely unremarkable findings on the mental status exam, including intact memory, attention, concentration, and pace" did not support greater limitations than the RFC. Second, the ALJ found that Plaintiff's presentation during the examination did not support social-interaction limitations more restrictive than the RFC. Third, Dr. Metoyer's opinion that Plaintiff's ability to complete a normal workday/workweek was "likely moderately impaired" was equivocal and vague, not supported by evidence other than Plaintiff's subjective report, and was not entirely consistent with the records revealing that Plaintiff interacts with family and attends medical appointments independently without significant anxiety.[81] Fourth, the ALJ found that Dr. Metoyer's opinion that Plaintiff would have marked limitations dealing with usual workplace stress in the identified circumstances was not explained or supported; therefore, the ALJ crafted an RFC that restricted Plaintiff to simple, routine tasks and simple workplace changes with limited public and coworker interaction.

Plaintiff argues that by discounting Dr. Metoyer's opined limitations, the ALJ improperly second-guessed the doctor's interpretation of his own mental-

---

[80] AR 1353.

[81] AR 1353.

1  status findings. The Court disagrees: the ALJ's analysis was thorough and

2  supported by substantial evidence.

3      As an initial matter, as mentioned above, the ALJ did incorporate

4  Dr. Metoyer's opinions that Plaintiff be limited to simple, routine tasks and simple

5  workplace changes, as well as no coordination of work activity with coworkers and

6  only superficial and occasional interaction with the general public. Therefore,

7  Plaintiff's challenge here is focused on the ALJ's decision not to incorporate

8  Dr. Metoyer's attendance and workday-completion limitations into the RFC.

9      First, the ALJ's finding that Dr. Metoyer's opinion that Plaintiff's "ability to

10  complete a workday/workweek was 'likely moderately impaired' . . . [was] equivocal

11  and vague" is reasonable and supported by substantial evidence.[82] While a medical

12  source's use of "likely" to modify his opinion may not always equate to a vague and

13  equivocal opinion, here, the use of the modifier, along with Dr. Metoyer's fairly

14  normal mental-health observations, supports the ALJ's finding that this

15  workday/workweek-completion limitation was equivocal and vague.

16      In addition, as the ALJ noted, Dr. Metoyer observed intact memory,

17  attention, concentration, and pace, notwithstanding the reported depressed and

18

19  [82] *See Meanel v. Apfel*, 172 F.3d 1111, 1113–14 (9th Cir. 1999) (determining the

20  opinion that the claimant would have "some" diminution in her concentration was

21  conclusory and was not supported); *Johnson v. Shalala*, 60 F.3d 1428, 1432–33 (9th

22  Cir. 1995) (determining the doctor's conclusory opinion was not substantiated).

23

irritable mood and observed congruent affect. The ALJ reasonably considered these observations, along with the longitudinal record, which indicated that Plaintiff was able to interact with family, including in large venue settings, and attend medical appointments without her anxiety and depression impacting her ability to productively interact with others. The ALJ appropriately considered that Plaintiff's anxiety and depression were often impacted by family stressors, when discussing past traumas, and during the initial months of Covid pandemic when her daughter and granddaughter were home more.[83] It is the ALJ's responsibility to consider and evaluate both the normal and abnormal mental-health symptoms and assess whether a medical opinion is consistent with and supported by the longitudinal medical record. While a different conclusion could be reached on this record, it is not the duty of the Court to reweigh the evidence, but instead to determine whether substantial evidence supports the ALJ's decision. Here, substantial evidence supports the ALJ's finding that Dr. Metoyer's attendance and work-completion limitations were unsupported and inconsistent with the record. Plaintiff fails to establish that reevaluation of Dr. Metoyer's opinion is appropriate.

---

[83] *See, e.g.*, AR 653, 665, 673, 692, 1922. *See also* AR 1338 (citing AR 3710 (noting medication helps her focus and be productive); AR 3704 (reporting increased focus and ability to stay on task with medication); AR 3689 (reporting she has difficulty focusing and concentrating when she does not take her medication)).

**C.    Step Five: Plaintiff fails to establish error.**

Plaintiff argues the ALJ failed to properly include all of her limitations into the RFC and the hypothetical presented to the vocational expert. However, this argument depends on her contentions that the ALJ erred in evaluating her symptom reports and Dr. Metoyer's medical opinion. Because there was no error, this final argument necessarily fails.

## IV.    Conclusion

Plaintiff fails to establish that the ALJ consequentially erred. The ALJ's nondisability findings are explained and supported by substantial evidence. Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **AFFIRMED**.

2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 8 and 12**, enter **JUDGMENT** in favor of the **Commissioner**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 30th day of October 2024.

_____
EDWARD F. SHEA
Senior United States District Judge